UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HECTOR M. RODRIGUEZ,

        Plaintiff,

v.                                                                     Case No. 06-C-811

USF LOGISTICS,

        Defendant.

**DECISION AND ORDER**

Hector Rodriguez brought this *pro se* Title VII action alleging that his former employer, USF Logistics, discriminated against him due to his Puerto Rican ancestry. According to the complaint, Rodriguez was involved in an altercation in which Dennis Wilkens, another USF employee, forcefully grabbed a trucking schedule out of Rodriguez's hands. Wilkens repeated the act and then blocked Rodriguez's truck with his own truck. Rodriguez then left the site. When he returned later, he was told that someone had overheard him threaten to cut someone (presumably Wilkens) with a knife. This threat – which Rodriguez denies making – resulted in his suspension and subsequent dismissal by USF Logistics.

The defendant has now moved for summary judgment.[1] To a *pro se* litigant, summary judgment may seem like a tower of paper and numbered paragraphs supported by a scaffolding of

---

[1] Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

unfamiliar rules. Courts are thus reluctant to strictly enforce the Federal Rules of Civil Procedure when doing so would suggest that the result was driven more by the plaintiff's unfamiliarity with such rules than by the merits of his case. Liberality is thus called for: "The essence of liberal construction is to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." *Greer v. Board of Educ. of City of Chicago, Ill.,* 267 F.3d 723, 727 (7th Cir. 2001) (quoting *Hudson v. McHugh,* 148 F.3d 859, 864 (7th Cir. 1998)). Accordingly, the fact that the plaintiff did not fully respond to the defendant's proposed findings of fact will not be deemed fatal.

By the same token, however, a defendant cannot be expected to bear the continued expenses and burdens of a lawsuit merely because a court decides to indulge a *pro se* litigant in its munificence. "[A] lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes....'" *Id.* (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1993)).

Luckily, I need not scour the record in this case hunting for possible factual disputes because the plaintiff has conceded certain key elements of his claim. Before getting to that, however, I must set forth Title VII's idiosyncratic "burden-shifting" approach:

> [This] approach requires that a plaintiff first establish certain prima facie elements suggesting race discrimination. To successfully set forth a prima facie case of racial discrimination, Fane must show that: 1) she is a member of a protected class; 2) she was meeting her employer's legitimate performance expectations; 3) she suffered an adverse employment action; and 4) other similarly situated employees who were not members of the protected class were treated more favorably. . . . If Fane succeeds in establishing a prima facie case, the burden of production shifts to Locke Reynolds to offer a permissible, nondiscriminatory reason for the adverse employment action. *Id.* If Locke Reynolds meets this burden, Fane must demonstrate that the firm's

purported reasons are a pretext for discrimination or that the decision was tainted by impermissible, race-based motives.

*Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007).[2]

Rodriguez has not successfully made out a prima facie case of discrimination. Most problematic is his attempt to show that he was meeting his employer's legitimate expectations. According to his brief, Rodriguez had been banned from loading or unloading at Charter Steel, USF Logistics' only or principal customer. This ban resulted from Charter Steel's complaints about the plaintiff's attitude. (Doucette Decl., ¶ 5.) Soon after, USF Logistics received a call complaining about Rodriguez from Burgess Norton Manufacturing Company, a customer of Charter Steel. (Doucette Decl., ¶ 6.) This resulted in USF Logistics having to write a letter of apology to the Burgess Norton employee who had complained. (Doucette Decl., Ex. 2.)

Rodriguez argues that his employer never conducted a full investigation of the facts and that it was "more concerned about losing their contracts with companies, than it was about losing one of their hard-working employees." (Pltf. Br. at 4.) But the employer is not required to conduct an investigation into customer complaints – the very fact that a customer is subjectively unhappy with a particular employee is enough to justify the employer's own displeasure or remedial action. That is, even if Rodriguez is right that the complaints about him were not warranted, the mere fact that there *were* complaints and that the customers no longer wanted to do business with him is a legitimate reason for the employer to conclude that he was not living up to its legitimate expectations. More concretely, the employer is entitled to hold the expectation that its employees

---

[2]This approach is used, as here, whenever there is no direct evidence of discrimination. It is the rare case when an employer is overheard expressing a prohibited bias. Here, for example, review of the transcript of Rodriguez's firing does not reveal, or even suggest, any racial bias. Rodriguez believed he was being wrongly fired, and jumped to the conclusion that it must have been due to anti-Puerto Rican bias.

would be able to perform work wherever they were needed – not that they would be banned from doing certain work by the employer's key customers. Thus, because he was unable to perform certain elements of his job, he has not shown that he was meeting his employer's legitimate expectations.[3]

Even if Rodriguez could set forth a prima facie case of discrimination, however, he could not establish that the employer's stated reason for firing him (the threat to cut someone) was pretextual. Once again, his argument is that the employer failed to conduct a thorough investigation to determine whether he actually made such a threat. He concedes that the company "did believe in its reasons to terminate the plaintiff," but states "that is not the question." (Pltf. Br. at 6.) Instead, he suggests the true question is whether the allegations against him were actually proven, which they were not. Unfortunately for Rodriguez, however, what the company believes *is* the question. As the defendant notes, Title VII does not mandate perfect, or even good, employment decisions. It merely prevents the employer from making a decision based on race. "This Court has long championed an employer's right to make its own business decisions, even if they are wrong or bad. Therefore, regardless of whether it is correct in its beliefs, if an employer acted in good faith and with an honest belief, we will not second-guess its decisions." *Green v. National Steel Corp., Midwest Div.,* 197 F.3d 894, 899 (7th Cir. 1999). Thus, so long as the employer's belief is honest, it does not matter whether it was factually correct. Indeed, the Seventh Circuit has specifically found the employer under no obligation to investigate in circumstances like these: "We held in *Kariotis* that although the company may well have been mistaken in its beliefs about its employee and perhaps should have conducted a more thorough investigation, there was insufficient evidence

---

[3]For the same reasons, it also appears there were not any employees similarly situated to Rodriguez, i.e., employees who had significant marks on their record due to customer complaints.

from which to conclude that the employer did not honestly believe that the employee had committed fraud." *Id.* (citing *Kariotis v. Navistar Int'l Transportation Corp.,* 131 F.3d 672, 677 (7th Cir. 1997).

It is certainly conceivable that a plaintiff could survive summary judgment had he alleged that the employer had reason to know the allegations against him were false. In that case, the employer's failure to investigate or dig deeper could suffice to call into question the employer's stated reason for firing the plaintiff and give rise to an inference of pretext. But here the plaintiff merely says that the employer took another employee's word for the allegations (including prior allegations of threats from different employees) without conducting a full investigation. That is not enough to show pretext, especially when the plaintiff concedes that the employer honestly (albeit wrongly) believed the serious allegation that he threatened to hurt another employee.

Accordingly, because the plaintiff can neither make out a prima facie case nor show pretext, the defendant's motion for summary judgment is **GRANTED** and the case is **DISMISSED**. Plaintiff's motion for a subpoena and motion for jury trial are **DENIED** as moot.

**SO ORDERED** this   20th   day of July, 2007.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge
